COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Russell and Malveaux
Argued at Richmond, Virginia


JOHN ALLEN BAUGH, JR.

                                                              OPINION BY
v.        Record No. 0152-17-2                    JUDGE MARY BENNETT MALVEAUX
                                                            JANUARY 30, 2018
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                                       David E. Johnson, Judge

                 James T. Maloney (Joseph D. Morrissey; James T. Maloney, PC;
                 Morrissey & Associates, LCC, on brief), for appellant.

                 J. Christian Obenshain, Assistant Attorney General (Mark R.
                 Herring, Attorney General, on brief), for appellee.


        John Allen Baugh, Jr. ("appellant") was convicted of failure to register as a sex offender, in

violation of Code § 18.2-472.1.  On appeal, appellant argues that the trial court erred in denying his

motion to dismiss where the retroactive application of a 2007 amendment to Virginia's Sex

Offender and Crimes Against Minors Registry Act ("VSOR"), Code §§ 9.1-900 to -923, violates the

*ex post facto* clause of the United States Constitution, Article 1, § 10.

                                       I.  BACKGROUND

        Appellant was convicted on December 4, 2000 of having carnal knowledge of a minor, in

violation of Code § 18.2-63.  As a result of this conviction, he was required to register as a sex

offender under VSOR, at the time codified at Code § 19.2-298.1.[1]

---

[1] In 2003, the General Assembly repealed former Code §§ 19.2-298.1 to 19.2-298.4 and
enacted the Sex Offender and Crimes Against Minors Registry Act, Code §§ 9.1-900 to -923.
2003 Va. Acts ch. 584.

PUBLISHED

In 2007, VSOR was amended by the addition of a new provision, Code § 9.1-903(G), requiring an individual subject to VSOR's registration provisions to "reregister either in person or electronically with the local law-enforcement agency where his residence is located within 30 minutes following any change of the electronic mail address information, any instant message, chat or other Internet communication name or identity information that the person uses or intends to use . . . ."  2007 Va. Acts chs. 759, 823.

On March 16, 2015, Officer Wilson of the Virginia State Police initiated a home verification of appellant's residence.  During conversation with the officer, appellant indicated that he had an email address, "equip2flip@gmail.com," for a year.  This email account was not registered with the Virginia State Police.

On March 21, 2016, appellant was indicted for failing to register as a sex offender in violation of Code § 18.2-472.1.  Appellant filed a motion to dismiss the indictment, arguing the Commonwealth's retroactive application to appellant of an amendment to VSOR requiring email registration violated the *ex post facto* clause of the United States Constitution.

During a hearing on the motion before the trial court, appellant argued that application of the amendment to VSOR requiring him to register his email address amounted to punishment, violating the United States Constitution's *ex post facto* clause.  Appellant relied on Doe v. Snyder, 834 F.3d 696 (6th Cir. 2016), a Sixth Circuit case holding that retroactive application of amendments to Michigan's sex offender registry was unconstitutional.  The Commonwealth argued that the issue was controlled by Kitze v. Commonwealth, 23 Va. App. 213, 220, 475 S.E.2d 830, 834 (1996), which held that the statutory requirement to register as a sex offender under then-existing Code § 19.2-298.1 was not punitive.  The Commonwealth also relied upon Smith v. Doe, 538 U.S. 84 (2003), in which the United States Supreme Court held that Alaska's

sex offender registration statutes were not punitive in either intent or effect and, thus, their retroactive application did not violate the *ex post facto* clause of the United States Constitution.

The trial court found that Kitze controlled, noting that it was binding with respect to the "unambiguous holding" that "the intent of the Virginia General Assembly in enacting the statute was to establish a civil proceeding." The court further found that "if the second prong of the Smith standard was applied to the statute," appellant had failed to demonstrate that the "effect of the statute . . . negates the General Assembly's intention to establish a civil proceeding." The court denied appellant's motion to dismiss. Appellant subsequently entered a conditional Alford[2] plea to the charge, pursuant to Code § 19.2-254. Appellant appeals his conviction to this Court.

## II. ANALYSIS

On appeal, appellant contends that the retroactive application of a 2007 amendment to VSOR as applied to him violates the *ex post facto* clause of the United States Constitution, Article 1, § 10.[3]

Appellant challenges the statute as applied to him as opposed to mounting a facial challenge to the constitutionality of VSOR. "Because our jurisprudence favors upholding the

---

[2] By tendering a conditional Alford plea, appellant acknowledged the evidence was sufficient to convict him but maintained his innocence. See North Carolina v. Alford, 400 U.S. 25 (1970). His Alford plea had "the same preclusive effect as a guilty plea." Perry v. Commonwealth, 33 Va. App. 410, 412, 533 S.E.2d 651, 652 (2000).

[3] Appellant also argues on appeal that the 2007 amendment violates Article I, § 9 of the Virginia Constitution. However, in his opening brief, appellant references that provision only in his assignment of error and conclusion; there is no discussion on how this state constitutional provision was violated by the 2007 amendment to VSOR. As appellant failed to provide any argument or authority on this particular contention, he has waived appellate review on this point of law. See Rule 5A:20(e); see also Martin v. Commonwealth, 64 Va. App. 666, 674-75, 770 S.E.2d 795, 798-99 (2015) (declining to consider appellant's argument that a retroactive re-categorization of his burglary conviction violated the *ex post facto* clause of Article I, § 9 when appellant failed to provide any authority to support that argument).

constitutionality of properly enacted laws, we have recognized that it is possible for a statute or ordinance to be facially valid, and yet unconstitutional as applied in a particular case." Volkswagen of Am., Inc. v. Smit, 279 Va. 327, 336, 689 S.E.2d 679, 684 (2010). We accord every legislative act a presumption of constitutionality, including laws subject to an as applied challenge. Id.

While acknowledging these principles, we also recognize our role in determining the constitutionality of a statute. "Whether a law violates the *[e]x [p]ost [f]acto* [c]lause is a question of law that we review *de novo* on appeal." Martin v. Commonwealth, 64 Va. App. 666, 669, 770 S.E.2d 795, 796 (2015).

The United States Constitution provides that "[n]o State shall . . . pass any . . . *ex post facto* Law." U.S. Const. art. I, § 10. Among other things, "[t]he *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28 (1981) (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26 (1866)). Further, a statute cannot be *ex post facto* unless it is penal in nature. "The constitutional prohibition against an *ex post facto* law applies to criminal proceedings and not to civil proceedings." Huffman v. Commonwealth, 210 Va. 530, 532, 172 S.E.2d 788, 789 (1970).

In 1994, Virginia enacted legislation relating to sex offender registration under former Code § 19.2-298.1, now codified at Code §§ 9.1-900 to -923. Under VSOR, offenders convicted of certain sex offenses must register and reregister certain information with the Virginia State Police. Code §§ 9.1-903, -904. The basic provisions of VSOR require an offender to provide identifying information, including address, place of employment, vehicle registration, and any

internet identifiers. Code § 9.1-903. Additionally, the offender must be photographed and

fingerprinted and provide a DNA sample. Id.

Since its enactment in 1994, VSOR has been amended on numerous occasions. The 2007

amendment at issue, which served as the basis for appellant's conviction, requires offenders to

reregister either in person or electronically within 30 minutes following any change of an email

address. Appellant contends that this amendment violates the *ex post facto* clause of the United

States Constitution because it retroactively inflicts greater punishment for his crime.[4]

---

[4] While we address appellant's challenge as a contention that the 2007 amendment
creates a statute in violation of the *ex post facto* clause, appellant's argument in his assignment of
error and opening brief is more expansive. His assignment of error alleges that the trial court
erred in denying his motion to dismiss because "retroactive application of *amendments* to
[VSOR]" violates the prohibition on *ex post facto* laws. (Emphasis added). He then contends on
brief that "numerous amendments" to VSOR have changed the registry from "a mere database of
individuals and their addresses" to "a list of onerous requirements that act, intended or not, as
burdensome and punitive obligations and limitations that were not in existence at the time the
appellant committed the offense requiring his compliance." He then provides a "sampling" of
these amendments, in particular the amendment reclassifying his underlying offense, carnal
knowledge of a child, in violation of Code § 18.2-63, as a sexually violent offense, 2008 Va.
Acts ch. 877. That amendment (1) extended appellant's required compliance with the
requirements of VSOR from 10 years to life, Code § 9.1-908; (2) provided that any failure of
appellant to comply with registry requirements would be punished as a felony rather than as a
misdemeanor, as it was penalized at the time of his offense, Code § 18.2-472.1(B); and
(3) prohibited appellant from entering certain school property, Code § 18.2-370.5. He also notes
that amendments to VSOR now require registration of any change of owned motor vehicle,
watercraft, or aircraft registration information. 2008 Va. Acts ch. 220 and Code § 9.1-903.
Appellant also lists an amendment requiring notification of attendance at any institution of
higher education. 2003 Va. Acts ch. 584 and Code § 9.1-906.

We decline to consider the effect of these amendments on VSOR for two reasons.

First, these amendments did not serve as the basis for appellant's conviction in the instant
case. Therefore, any discussion of their impact on appellant would be speculative based upon
the record before us.

Second, appellant himself represented to the trial court that the sole issue before it was
the application of the 2007 amendment requiring email registration. At the hearing on the
motion to dismiss, counsel for appellant told the trial court "[VSOR] changed as I said . . .
subsequent changes included reporting requirements for residency, which we're not challenging
here, [and] requirements for reporting email addresses, which is the gravamen of the offense
here." Counsel further stated that "we're asking the [c]ourt to rule that the Commonwealth's
retroactive application of the [VSOR] amendments, to wit: register your email address amounts
to punishment." The argument before the trial court was that the email reporting requirement
violates the United States Constitution's *ex post facto* clause; as such, this is the argument we

The primary guidepost for our analysis in determining the merit of appellant's argument is the Supreme Court's decision in Smith v. Doe, 538 U.S. 84 (2003). In Smith, the Supreme Court examined an *ex post facto* challenge to Alaska's Sex Offender Registration Act, brought by individuals convicted of sex offenses prior to passage of the Act. Specifically, the Court "considered a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the *[e]x [p]ost [f]acto* [c]lause." Id. at 92. The Supreme Court noted that the "framework" for this inquiry was "well[-]established."

> We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." Kansas v. Hendricks, 521 U.S. 346, 361, 117 S. Ct. 2072, 138 L.Ed.2d 501 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" Ibid. (quoting United States v. Ward, 448 U.S. 242, 248-249, 100 S. Ct. 2636, 65 L.Ed.2d 742 (1980)).

Id. Under this two-step inquiry, the Supreme Court found that the registration requirements imposed by the Alaska Sex Offender Registration Act were non-punitive; therefore, the registration requirement could be applied retroactively without violating the *ex post facto* clause of the Constitution.

Using the Smith two-part analysis to determine whether the 2007 amendment produced a statutory scheme in violation of the *ex post facto* clause, we first look to whether the General Assembly meant the statute to establish a civil rather than criminal proceeding. Whether a statutory scheme is civil or criminal "is first of all a question of statutory construction." Smith, 538 U.S. at 92 (citing Hendricks, 521 U.S. at 361). The Court considers both the statute's text

---

address on appeal. "[T]his Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" Farnsworth v. Commonwealth, 43 Va. App. 490, 500, 599 S.E.2d 482, 487 (2004) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998)).

and its structure to determine the legislative objective.  Id.  In doing so, "courts 'must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'"  Id. at 93 (quoting Hudson v. United States, 522 U.S. 93, 99 (1997)).

Our Court has previously addressed the issue of the General Assembly's intent in establishing VSOR in Kitze v. Commonwealth, 23 Va. App. 213, 475 S.E.2d 830 (1996).  In Kitze, defendant was found guilty of rape and malicious wounding on July 9, 1990.  Id. at 215, 475 S.E.2d at 831.  The Supreme Court of Virginia reversed these convictions and remanded the case for retrial.  Id.  On July 1, 1994, Code § 19.2-298.1, the precursor to the current VSOR, became effective.  Id.  Defendant pled guilty to both charges at his second trial on August 26, 1994.  Id.  The trial court sentenced him to a period of incarceration, and in addition, required him to register with the sex offender registry.  Id. at 215-16, 475 S.E.2d at 831-32.  Defendant argued that because Code § 19.2-298.1 was enacted after the offenses occurred, the trial court violated his federal and state constitutional rights against the imposition of an *ex post facto* law. Id. at 215, 475 S.E.2d at 831.  Our Court disagreed, holding that there was no *ex post facto* violation because VSOR was not penal in nature.  Id. at 217, 475 S.E.2d at 832.  The Court specifically noted that the General Assembly "intended to facilitate law enforcement and protection of children" with "no intent to inflict greater punishment [on the convicted sex offender]."  Id. (quoting Snyder v. State, 912 P.2d 1127, 1131 (Wyo. 1996)).

In addition to Kitze, we have a significant indication that the General Assembly intended for the statute to be civil in nature from the preamble to the statute itself.  The preamble to the statute provides that "[t]he purpose of the Sex Offender and Crimes Against Minors Registry . . . shall be to assist the efforts of law-enforcement agencies and others to protect . . . children from becoming victims of criminal offenders by helping to prevent such individuals from being

allowed to work directly with children." Code § 9.1-900. This statement of non-punitive objectives in the statutory text clearly demonstrates the General Assembly's "express[]" preference for VSOR to constitute a civil, non-punitive regime. Smith, 538 U.S. at 93 (quoting Hudson, 522 U.S. at 99).

Based upon the foregoing, we conclude that it was the General Assembly's intent for VSOR to be civil and non-punitive in nature. Having concluded that the General Assembly intended VSOR to be civil, we next determine whether the law is "so punitive either in purpose or effect as to negate" that intent. Id. at 92 (quoting Ward, 448 U.S. at 249). "Because we 'ordinarily defer to the legislature's stated intent,' 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. (first quoting Hendricks, 521 U.S. at 361, and then quoting Hudson, 522 U.S. at 93).

To analyze whether a scheme is so punitive in purpose or effect as to negate a non-punitive intent, the Supreme Court in Smith applied the Mendoza-Martinez factors. Id. at 97 (citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)). While Mendoza-Martinez identified seven relevant factors, the Court in Smith found that five of these factors were "most relevant" to the analysis in Smith.

> [W]hether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

Smith, 538 U.S. at 97; see also Mendoza-Martinez, 372 U.S. at 168-69. These factors are only "guid[es]" and are "neither exhaustive nor dispositive." Ward, 448 U.S. at 249.

Here, an analysis of the relevant Mendoza-Martinez factors compels the conclusion that appellant has not demonstrated by the "clearest proof" that the 2007 amendment to VSOR transformed a civil remedy into a criminal penalty.

The first of the Mendoza-Martinez factors considers whether the reporting requirement has historically been regarded as a punishment. It is obvious that a requirement to report email addresses to law enforcement does not involve the real-time public display for ridicule and shaming that defined historical punishments. See Smith, 538 U.S. at 98 (noting early punishments like whipping, pillory, and branding). Appellant argues, however, that the requirement that an offender regularly update law enforcement with new email addresses within 30 minutes of acquiring them is akin to probation supervision which is historically and traditionally identified as punishment. This argument is unpersuasive. While appellant is required to update local law enforcement when he acquires a new email address, we do not find this requirement to involve the level of supervision that probation places on an individual. Further, providing information to a local law enforcement agency has historically not been viewed as punishment; instead, such requirements have historically been viewed as serving a regulatory purpose, such as increasing the safety of the public from known violent sex offenders. Smith, 538 U.S. at 98-99.

The second factor involves a determination of whether the statute subjects those within its purview to an "affirmative disability or restraint." Mendoza-Martinez, 372 U.S. at 168. Appellant contends that it does, as requiring appellant to report any new email address presents "a limitation on the ease or ability of one to interact with society." While the requirement to register new email addresses does impose some limitation, it does not subject individuals to an affirmative disability or restraint. It "imposes no physical restraint, and so does not resemble the punishment of imprisonment . . . the paradigmatic affirmative disability or restraint." Smith, 538

- 9 -

U.S. at 100.  At best, the burden of providing new email addresses, by means of registration, is a "minor and indirect" restraint and not one that is tantamount to punishment.  Id.

The third factor asks if the statute promotes the traditional aims of punishment— "retribution and deterrence."  Mendoza-Martinez, 372 U.S. at 168.  While requiring appellant to register new email addresses with law enforcement may have a deterrent effect, any such deterrence, if it exists at all, is relatively minor.  Thus, this factor does not weigh in favor of a finding that VSOR has a punitive effect.

Fourth, we examine the statute's "rational connection to a non-punitive purpose."  Smith, 538 U.S. at 97.  This is the "most significant factor" in considering the statute's punitive effect. Id. at 102.  We find that the amendment has a rational connection to a legitimate, non-punitive purpose—public safety—which is advanced by law enforcement having the ability to monitor the online communication of offenders.  Requiring offenders to identify email addresses through registration reasonably relates to the Commonwealth's interests in improving the ability of law enforcement to protect the public, where a "high rate of recidivism among convicted sex offenders" poses a real concern.  Id. at 103.

However, appellant argues that the email requirement does not have a rational connection to a non-punitive purpose as it serves little supervisory purpose.  Appellant contends that "unlike a physical address, an email address is used, the overwhelming majority of the time, for a non-public use, such as registering for the purchase of goods, enrollment in organizations, application for employment or other activities or services," which "are not things that are readily monitored by the mere identification of the offender's email address."  We are unconvinced by this argument.  We find that enabling law enforcement to determine whether offenders are using email addresses to communicate with potential victims has a definite rational connection to a non-punitive purpose, even if appellant is correct in his claim that the majority of email

- 10 -

addresses have a "non-public use." Here, it is rational to conclude that a public safety goal is advanced by law enforcement agencies having an offender's email address.

Fifth, and finally, we look to whether VSOR, as amended, is excessive with respect to its non-punitive purpose. Appellant argues that requiring him to register a new email address within 30 minutes is excessive. We acknowledge that the 30-minute period in which an offender must register a new email address is a relatively short amount of time. However, an offender can register either in person or electronically. Thus, we find that the amendment is not excessive with respect to VSOR's non-punitive purpose, as it allows for electronic reregistration of an email address rather than requiring in-person reporting.

In summary, of the five factors identified by Smith as most relevant to determining whether a statute has a punitive effect, all point clearly toward treating the effects of the 2007 amendment as non-punitive. Yet, appellant argues that an examination of these factors requires this Court to conclude that VSOR as amended in 2007 is punitive, relying on a recent Sixth Circuit case, Doe v. Snyder, 834 F.3d 696 (6th Cir. 2016). Appellant's reliance upon Snyder is misplaced.[5]

At issue in Snyder were two amendments to Michigan's sex offender act. In 2006, Michigan amended its sex offender registry statute to prohibit sex offenders from "living, working, or 'loitering' within 1,000 feet of a school." Id. at 698. In 2011, Michigan again amended its sex offender registry to impose additional registration requirements on sex offenders, such as requiring offenders "to appear in person 'immediately' to update information

---

[5] We also note that while perhaps informative, a decision of a federal circuit court is not binding on our Court. "Only decisions of the United States Supreme Court can supersede binding precedent from the Virginia Supreme Court." Saunders v. Commonwealth, 62 Va. App. 793, 804, 753 S.E.2d 602, 607 (2014); see also Congdon v. Congdon, 40 Va. App. 255, 265, 578 S.E.2d 833, 838 (2003) (holding that panel decisions of the Virginia Court of Appeals are binding unless overruled by the Court sitting *en banc* or the Virginia Supreme Court).

such as new vehicles or 'internet identifiers' (e.g., a new email account)." Id. The Sixth Circuit concluded that the 2006 and 2011 amendments to the statute were punitive and that, as a result, retroactive application of their provisions to individuals convicted prior to their enactment violated the federal constitutional right to not be subjected to *ex post facto* laws. Id. at 705-06.

Snyder is factually distinguishable from the instant case in several significant ways. First, at issue in Snyder were two amendments to the state's sex offender registry, a 2006 amendment which included prohibitions on where a sex offender could work and live, and a 2011 amendment requiring offenders to register new email addresses. Id. at 698. Here, our focus is solely on an amendment to VSOR requiring the registration of new email addresses. Further, the 2011 amendment to the Michigan statute is more restrictive than the 2007 amendment to the Virginia statute. The 2011 amendment in Snyder required offenders to appear immediately and in person to update a new email address. Id. Here, an offender can update an email address either in person or electronically, within 30 minutes of acquiring a new email account. Because of these notable differences, we are not swayed by appellant's reliance on Snyder and find that it does not compel us to hold that VSOR as amended in 2007 has become punitive in nature.[6]

_____

[6] We also note the different procedural postures of Snyder and the case at hand. In Snyder, six plaintiffs sued the governor of Michigan and the director of Michigan's state police challenging the state sex offender registry's validity on a number of grounds, including that its retroactive application to them—specifically, the retroactive application of the amendments that went into effect starting in 2006 or later—amounted to an *ex post facto* punishment prohibited by the United States Constitution. Snyder, 834 F.3d at 698. Here, appellant is challenging his criminal conviction, claiming that the application to him of a 2007 amendment to VSOR violates the Constitution's *ex post facto* clause. While both cases involve challenges based upon the *ex post facto* clause, the evidentiary record in Snyder is much more expansive than the one at hand. The record in this case, in which a constitutional claim is raised in the context of a criminal appeal, simply does not contain the extensive documentation—including maps visually depicting the effects of the Michigan law's geographical restrictions—that was relied on by the Sixth Circuit in Snyder to show the significant punitive effects of the Michigan law. See id. at 701-02. Here, unlike the defendants in Snyder, appellant has failed to demonstrate that VSOR is punitive in purpose or effect.

Overall, a review of VSOR demonstrates that the General Assembly did not intend to impose additional punishment for past sex offenses but instead wanted to put into place a non-punitive, civil regulatory scheme. Given that intent, the question is whether appellant presented the "clearest proof" that the 2007 amendment to VSOR created a statutory scheme that is so punitive in effect as to negate its civil intent. This proof is lacking, as examination of the <u>Mendoza-Martinez</u> factors makes clear. Accordingly, we conclude that appellant has failed to establish that VSOR is so punitive in purpose or effect that we should deem it to be a criminal penalty.

## III. CONCLUSION

We hold that the 2007 amendment to VSOR did not transform the civil statute into a criminal penalty. Thus, the trial judge did not err in denying appellant's motion to dismiss his indictment and we affirm appellant's conviction.

<u>Affirmed.</u>