COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Friedman and Frucci
Argued at Norfolk, Virginia


JOHN DOE

MEMORANDUM OPINION[*] BY
v.       Record No. 0216-24-1          JUDGE STEVEN C. FRUCCI
MAY 20, 2025

COLONEL GARY T. SETTLE, IN HIS OFFICIAL
 CAPACITY AS SUPERINTENDENT OF THE
 VIRGINIA DEPARTMENT OF STATE POLICE


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Andrew D. Kubovcik, Judge

Arie M. Jones (Timothy P. Bosson; Isaiah R. Kalinowski; Bosson
Legal Group, PC, on briefs), for appellant.

John P. O'Herron (Catherine L. Chapman; Erika Maley, Solicitor
General; Steven G. Popps, Deputy Attorney General;
ThompsonMcMullan, P.C., on brief), for appellee.


The Circuit Court of the City of Chesapeake sustained Gary T. Settle's demurrer to John

Doe's[1] complaint challenging his inclusion on the Virginia Sex Offender Registry (the "Registry").

Doe contends the circuit court erred in dismissing his ex post facto and due process claims by

holding that the Registry is not punitive, he has no liberty interest to be free from lifetime

supervision, and he had no property interest in his electronic property. Doe also argues that the

circuit court erred by failing to apply strict scrutiny to his infringed upon property interests. For the

reasons discussed below, we affirm the circuit court's ruling sustaining the demurrer.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Doe also moved for leave to use a pseudonym, which was denied by the circuit court as
being moot when the complaint was dismissed with prejudice. Since the briefs we received on
appeal continued to use "John Doe" as the party's name, we will also refer to appellant under the
pseudonym "John Doe."

BACKGROUND

In October 1992, Doe was convicted of three counts of aggravated sexual battery under Code § 18.2-67.3 and was sentenced to fifteen years of incarceration with seven years suspended. Upon being released from jail, Doe was to be on probation for ten years. However, due to good behavior, Doe was only required to serve four and a half years of his sentence. He then only served one year of parole before being released.

In 1994, the General Assembly enacted the Registry, which required offenders convicted of certain sex offenses to register specified information with the Virginia State Police ("VSP").[2] Compliance with the Registry also applied to offenders who were serving a sentence or who were under supervision for certain sex offenses. Since Doe was serving a sentence for a qualifying sex offense at the time the Registry was enacted, he was required to register.

Since 1994, the Registry has been amended numerous times. Among its amendments, in 2003, the General Assembly enacted the Sex Offender and Crimes Against Minors Registry Act to "assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat offenders and to protect children from becoming victims of criminal offenders by helping to prevent such individuals from being allowed to work with children." Code § 9.1-900.

---

[2] Offenders are also required to verify this information with the VSP between one and four times a year, depending on the severity of the sexual offense.

Under the current requirements of the Registry, Doe: must register for life[3]; has certain personal information[4] publicly available by means of the internet; must verify his personal information annually[5]; must, every two years, execute a consent form consistent with applicable law that authorizes a business or organization that offers electronic communications or remote computer services to provide to the Department of State Police any information pertaining to that person necessary to determine the veracity of his electronic identity information in the Registry; must submit to be photographed every two years; must register within 30 minutes, either in person or electronically, if he has any change of email, instant message, chat, or other internet communication name or identity information; and must reregister in person within three days if he has a change in his name, employment, residence, or ownership of vehicles.  Code § 9.1-903.

In September 2023, Doe filed a declaratory judgment action in which he asserted that the Registry statutes have been wrongly applied to him and sought a permanent injunction removing him from the Registry.  In the first count of his complaint, Doe argued that the Registry statutes violate the ex post facto clause of the Virginia Constitution because his crimes occurred in 1991 and the Registry was not enacted until 1994.  Doe also averred that the Registry laws are punitive in

---

[3] Registration requires: Doe to be photographed; a sample of his blood, saliva, or tissue; his email information, instant message, chat, or other internet communication name or identity information; his fingerprints and palm prints taken; proof of residency; information regarding his place of employment; and vehicle registration information.  Further, Doe must register for life because he was convicted of a Tier III offense (previously referred to in the Code as a sexually violent offense).  Persons convicted of a Tier I or Tier II offense, which are less severe sexual offenses, may petition the circuit court for removal from the Registry.  Code § 9.1-908.

[4] This information includes: name and all aliases, the date and locality of the conviction with brief description of his offense, age, current residential and work address, photograph, the name of any institution of higher education, if enrolled, and such other information as the State Police determines is necessary to preserve public safety.

[5] Previously, Doe was required to reregister four times a year, but the circuit court granted his petition to reduce his reregistration requirement to once a year pursuant to Code § 9.1-909.

nature.[6]  In his second count, Doe contended that the lifetime registration requirement of the Registry violates his due process rights, specifically his property and liberty interests in Sections 1 and 11 of the Virginia Constitution.

Settle filed a demurrer, arguing that the Registry does not violate ex post facto prohibitions because it is not penal in nature since it "was enacted as a civil regulatory scheme and not for a criminal, punitive purpose."  Specifically, Settle contended it was enacted "to facilitate law enforcement and protection of children."  Secondly, Settle demurred to Doe's due process count by claiming that Doe fails to identify any property interest he is deprived of and that the Supreme Court of Virginia has held that "registration under the Registry does not violate substantive or procedural due process."[7]

On January 24, 2024, after a hearing, the circuit court sustained the demurrer with prejudice,[8] finding that (1) there is no ex post facto violation because the intent of the Registry is to protect the citizens of the Commonwealth and the statutes are "not so punitive . . . in its purpose or effect, to negate the intent of the statute" because the Registry laws are "rationally connected to a non-penal purpose," to-wit: public safety, and (2) the laws do not prohibit Doe from traveling or

---

[6] In addition to the requirements listed in Code § 9.1-903, Doe argues that the Registry is also penal in the following ways: he is assigned a compliance officer; he is "publicly branded" a Tier III offender; he is banned from certain professions (Code §§ 46.2-116, -2099.49); he has a special designation on his driver's license (Code § 46.2-341.9(A)); it is a crime to knowingly leave a child alone with Doe (Code § 16.1-228(6)); with exceptions, Doe cannot attend events on or at school buildings (Code § 18.2-370.5); if he travels to another state, he must comply with their registration laws; he must notify VSP ten days in advance before moving out of state; he must get pre-approval from the State Department to travel internationally; his driver's license lasts for only five years, instead of the typical eight (Code § 46.2-330(A)) and he must renew it in-person and pay a fee instead of doing it electronically (Code § 46.2-330(F)(2)); and it is a felony for failing to register, reregister, or verify registration information (Code § 18.2-472.1(B)).

[7] *McCabe v. Commonwealth*, 274 Va. 558, 563 (2007).

[8] Doe did not request leave to amend his complaint.

- 4 -

using the internet, but instead they impose "reasonable restraints" "for the protection of the people of the [C]ommonwealth." Doe appeals.

## ANALYSIS

Doe contends the circuit court erred by: (1) holding that the Registry, as applied to Doe, is not punitive, (2) failing to find Doe had a liberty interest to be free from "lifetime supervision," and (3) failing to find Doe had a property interest in his electronic property, computer use, and online identity information.

We review the circuit court's ruling on a demurrer de novo. *AGCS Marine Ins. v. Arlington Cnty.*, 293 Va. 469, 473 (2017). The purpose of a demurrer is to test whether the complaint states a cause of action upon which relief can be granted. *See* Code § 8.01-273(A). Therefore, to survive a demurrer, the "pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122 (2006). In ruling on a demurrer, a court accepts as true the facts pled in the pleading and "all reasonable and fair inferences that may be drawn from those facts." *Id.* at 119 (quoting *Glazebrook v. Bd. of Supervisors of Spotsylvania Cnty.*, 266 Va. 550, 554 (2003)). "A demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 317 (2006). Also, this Court "must distinguish allegations of historical fact from conclusions of law." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 359 (2018). "We assume the former to be true *arguendo*, but we assume nothing about the correctness of the latter because 'we do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences.'" *Id.* (quoting *AGCS Marine Ins.*, 293 Va. at 473).

"Because our jurisprudence favors upholding the constitutionality of properly enacted laws, we have recognized that it is possible for a statute or ordinance to be facially valid, and yet unconstitutional as applied in a particular case." *Baugh v. Commonwealth*, 68 Va. App. 437, 442

- 5 -

(2018). "We accord every legislative act a presumption of constitutionality, including laws subject to an as applied challenge." *Id.* "Arguments challenging the constitutionality of a statute or regulation are questions of law that this Court reviews de novo on appeal." *Digiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 133 (2011). Specifically, "[w]hether a law violates the *[e]x [p]ost [f]acto* [c]lause is a question of law that we review *de novo* on appeal." *Baugh*, 68 Va. App. at 442 (all but first alteration in original) (quoting *Martin v. Commonwealth*, 64 Va. App. 666, 669 (2015)). In addition, "[w]hether a person has been deprived of due process is a question of law that we review de novo." *Cnty. of Henrico v. O'Neil*, 75 Va. App. 312, 331 (2022).

## I. Ex Post Facto Claim

Doe argues that the circuit court erred in finding that the Registry does not violate the ex post facto clause of the Virginia Constitution because the entire Registry as applied to him is punitive.

"The United States Constitution, article 1, § 10, and the Virginia Constitution, article 1, § 9, prohibit the Commonwealth from enacting *ex post facto* laws." *Kitze v. Commonwealth*, 23 Va. App. 213, 216 (1996). "[T]he *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Baugh*, 68 Va. App. at 442. "Further, a statute cannot be *ex post facto* unless it is penal in nature." *Id.* at 443. "The constitutional prohibition against an *ex post facto* law applies to criminal proceedings and not to civil proceedings." *Id.*

Like the Supreme Court of the United States, we utilize a two-step test to determine whether a law is violative of ex post facto prohibitions. *Smith v. Doe*, 538 U.S. 84 (2003). First, a court must determine "whether the legislature meant the statute to establish 'civil' proceedings." *Id.* at 92. And second, if the statute is not facially punitive, the court must determine "whether the

- 6 -

[Registry] is so punitive either in purpose or effect as to negate [the State's] intention to deem it 'civil.'" *Id.* (second alteration in original). Further, "[b]ecause we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.*

In this case, Doe concedes the first step of the test, agreeing that the General Assembly did not intend for the Registry to be punitive.[9] Accordingly, we analyze the second step to determine whether the Registry is violative of ex post facto prohibitions. This second part of the inquiry utilizes seven non-exhaustive factors articulated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). These factors are: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Id.* Of these factors, the Supreme Court has identified factors one, two, four, six, and seven as the most relevant in determining whether a statute has a punitive effect in this context, and this Court has adopted the same view. *Baugh*, 68 Va. App. at 450 (discussing *Smith*, 538 U.S. at 97).

Doe urges this Court to give the *Smith* case, as decided by Supreme Court of the United States, less deference because Virginia can provide greater protection under its constitution than

---

[9]    The purpose of the Sex Offender and Crimes Against Minors Registry . . . shall be to assist the efforts of law-enforcement agencies and other to protect their communities and families from repeat offenders and to protect children from becoming victims of criminal offenders by helping prevent such individuals from being allowed to work directly with children.

Code § 9.1-900.

what is provided in the United States Constitution. As an initial matter, we note that the ex post facto provisions in the United States Constitution and Virginia Constitution are nearly identical.[10] Doe is correct in his notion that the "United States Constitution is a floor, not a ceiling" and that "states may provide 'additional protections exclusively as matters of state law.'" *Campbell v. Commonwealth*, 69 Va. App. 217, 234 (2018) (quoting *Cooper v. California*, 386 U.S. 58, 62 (1967)). And "'[s]tate courts are absolutely free to interpret state constitutional provisions to accord greater protection' than federal-court interpretations of 'similar provisions of the United States Constitution,'" we nonetheless reject his invitation. *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 528 (2023) (quoting *Arizona v. Evans*, 514 U.S. 1, 8 (1995)). Doing so would be a divergence from the sound analysis used by this Court in interpreting whether the Registry is punitive as it relates to the ex post facto clause of the Virginia Constitution. *See Baugh*, 68 Va. App. 437; *Kitze*, 23 Va. App. 213.

As this Court found in *Baugh*, we also find that factors one, two, four, six, and seven are the most relevant in our determination whether the Registry is punitive as applied to Doe. Accordingly, we focus on these five factors in turn: whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

1. *Whether the sanction involves an affirmative disability or restraint*

Doe argues that the Registry imposes an affirmative disability and restraint on him by (1) "compelling affirmative conduct under burdensome timeframes"; (2) restricting his travel, the

---

[10] "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9. "[T]he General Assembly shall not pass any bill of attainder, or any ex post facto law." Va. Const. art. I, § 9.

places he can attend, and his options for employment; and (3) "exposing him to community wide ostracism."

To determine whether the Registry subjects Doe to an affirmative disability or restraint, "we inquire how the effects of the [Registry] are felt by those subject to it." *Smith*, 538 U.S. at 99-100. "If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Id.* at 100. Doe argues that Registry imposes an affirmative disability and restraint on him because he must update his information with the VSP when he changes his job, moves residences, buys a vehicle, or graduates college. Importantly, we note that the Registry does not directly restrict Doe's ability to do these things—he can still change his occupation, move, purchase a vehicle, and attend and graduate from college. The Registry simply requires his information to be up to date, such as where he lives and what car he drives (things that anyone with home or automobile insurance would have to notify their insurance carrier of). Accordingly, we find that the "affirmative conduct under burdensome timeframes" that Doe is "compel[led]" to comply with is minor and indirect and does not rise to the level of an affirmative disability or restraint.

Next, Doe's argument that he "is banned from certain occupations," "prohibited from certain locations," and "deterred from interstate travel" is misleading and unpersuasive. First, Doe contends that the Registry prohibits him from driving a tow truck or working for a rideshare service. However, Code § 46.2-116 provides that a person seeking a job as a tow truck driver may still have their application denied because of their conviction. Doe's conviction of aggravated sexual battery would still be on his criminal record even if he was removed from the Registry. Likewise, even if Doe was granted the relief he seeks, he could not be employed by a rideshare service because of his underlying conviction. "A transportation network company shall not authorize an individual to act as a TNC partner if . . . the individual . . . [h]as ever been convicted of . . . a violent felony offense

as listed in subsection C of § 17.1-805[.]"[11] Code § 46.2-2099.49(C). Second, Doe argues that the Registry prevents him "from attending events on or at school buildings." But the prohibition in Code § 18.2-370.5[12] is based on Doe's conviction of aggravated sexual battery, not because he is a registered sex offender. Further, Doe can petition the circuit court to attend events on school grounds pursuant to subsection C of that code section despite his conviction. Therefore, though Doe argues that the Registry is punitive in these ways, these "affirmative disabilities" or "restraints" are not imposed by the Registry but flow from his conviction.

Lastly, although Doe alleges that the Registry "expos[es] him to community wide ostracism," he does not connect this to an affirmative disability or restraint. "[O]ur criminal law tradition insists on public indictment, public trial, and public imposition of sentence." *Smith,* 538 U.S. at 99. As discussed above, even if Doe was removed from the Registry, his public criminal record would still reflect he is a convicted felon of aggravated sexual battery.

For the reasons stated above, the Registry does not involve an affirmative disability or restraint.

2. *Whether it has historically been regarded as punishment*

Doe argues that the Registry "functions like parole or probation" and "it duplicates the historical punishment of public shaming."

"Even punishments that lacked the corporal component, such as public shaming, humiliation, and banishment, involved more than the dissemination of information." *Smith*, 538 U.S. at 98. "By contrast, the stigma of [the Registry] results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public." *Id.* "The publicity may cause adverse consequences for the convicted defendant,

---

[11] Aggravated sexual battery is a listed violent felony offense.

[12] Offenses prohibiting entry onto school or other property.

- 10 -

running from mild personal embarrassment to social ostracism." *Id.* at 99. "In contrast to the colonial shaming punishments, however, the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme." *Id.*

Doe's requirement to register is distinguishable from the punishment of public shaming. Like Alaska's registry, as analyzed in *Smith*, citizens in Virginia must take the initial step of going to the VSP's website, proceed to the Registry, and then look up the desired information. "The process is more analogous to a visit to an official archive of criminal records than it is to a [punitive] scheme forcing an offender to appear in public with [a] visible badge of past criminality." *Id.* at 99. Indeed, Doe can go to the grocery store, the beach, sporting events, concerts, etc., without people being aware that he is on the Registry unless they have taken the steps to peruse the Registry and commit Doe's appearance to memory. The Registry provides important information to those within the community who need it, and in doing so, it does not seek to make a public spectacle of registrants or gratuitously force them to endure public ridicule.

Like the Supreme Court of the United States stated, "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." *Id.* at 98. "The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender." *Id.* at 99. "Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Id.*

For the foregoing reasons, we do not find that the Registry is analogous to public shaming, and therefore, the requirement to register is not historically regarded as punishment.

3. *Whether its operation will promote the traditional aims of punishment—retribution and deterrence*

Doe argues that the Registry promotes traditional aims of punishment by (1) seeking incapacitation by limiting registrants' anonymity, use of technology, and interactions with children; (2) being retributive "in that it inflicts painful requirements and restrictions based on commission of a crime"; and (3) seeking deterrence specifically by "track[ing] and monitor[ing]" "a registrant's every move" and deterrence generally "because no person would want the restricted, shamed life of a registrant."

"Any number of governmental programs might deter crime without imposing punishment." *Smith*, 538 U.S. at 102. "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Id.* (alteration in original). Although the Registry "differentiates between individuals" depending on the severity of the offense, we agree with the Supreme Court that "[t]he broad categories . . . and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." *Id.* Here, Doe was convicted of a sexually violent offense. The General Assembly has determined that the danger of recidivism for such a crime is too high to permit removal from the registration requirements under the Registry. We find that this consequence of the crime is more closely related to "the Government's ability to engage in effective regulation" than as a deterrent to criminal actions. *Id.* As the General Assembly has stated, the purpose of the Registry is for public safety, and this Court agrees that these limitations are in place to restrict Doe's opportunity to recommit a similar act, not to punish him for his past act.

Although the Registry may have a deterrent effect, we find that it is minor and does not shift the weight of this factor towards promoting the traditional aims of punishment.

- 12 -

4. *Whether an alternative purpose to which it may rationally be connected is assignable for it*

Doe argues that the Registry is "not only ineffective" but actually "hamper[s] the ability of the public and law enforcement to accurately identify dangerous persons" and accordingly "lacks a rational connection to a non-punitive purpose."

The Registry's "rational connection to a nonpunitive purpose . . . is the most significant factor in considering the statute's punitive effect." *Baugh*, 68 Va. App. at 448-49. "[T]he [Registry] has a legitimate nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community." *Smith*, 538 U.S. at 102-03. Specifically, in *Baugh*, this Court found that "enabling law enforcement to determine whether offenders are using email addresses to communicate with potential victims has a definite rational connection to a non-punitive purpose." 68 Va. App. at 449. As stated by the General Assembly and held by our courts, the Registry is rationally connected to public safety.

Like the respondents in *Smith*, Doe argues that "the Registry casts too wide a net to be useful" and generally argues that the registration and notification system may in fact increase recidivism. Although it appears that Doe recognizes the stated goal that "registration and related provisions is to counter high recidivism amongst sex offenders, preventing future crimes through public information-spreading, accountability, and limited interaction with children," he disputes that this goal is rationally connected to the Registry. We disagree with Doe's contention. Registration "reasonably relates to the Commonwealth's interests in improving the ability of law enforcement to protect the public, where a 'high rate of recidivism among convicted sex offenders' poses a real concern." *Baugh*, 68 Va. App. at 449 (quoting *Smith*, 538 U.S. at 103). In addition to improving law enforcement's ability to protect the public, the Registry also "alert[s] the public to the risk of sex offenders in their community." *Smith*, 538 U.S. at 103.

Notably, the test is not that the alternative purpose to which it may *perfectly* connected is assignable for it, but that it is *rationally* connected. "A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aim it seeks to advance." *Id.* For the reasons stated above, we find that the Registry has a rational connection to a non-punitive purpose.

5. *Whether it appears excessive in relation to the alternative purpose assigned*

Doe argues that the "burdensome regulations" the Registry requires "for the rest of his life" are excessive in relation to the alternative purpose assigned. Specifically, Doe alleges that the Registry operates to: track all of his online activity, waive any right he has to privacy, restrict where he can travel, limit where he can work, ostracize him from the community, require him to show up "hundreds of times" in-person to verify his information, surrender his blood, saliva, and DNA to the VSP, and subject him to random visits from a compliance officer. We note that many of these allegations are exaggerated and can be misleading.

In *Smith*, the Supreme Court of the United States rejected two arguments that suggested the Alaska Sex Offender Registration Act was excessive in relation to its regulatory purpose. "[F]irst, that the statute applies to all convicted sex offenders without regard to their future dangerousness; and, second, that it places no limits on the number of persons who have access to the information." *Smith*, 538 U.S. at 103.

As discussed previously, the Registry does not "limit where he can work" or "ostracize him from the community" in the manner he alleges. Rather, his conviction for aggravated sexual battery impacts those two "burdensome regulations." As far as restricting where he can travel, Doe broadly concludes that he must receive permission from the State Department to travel internationally. However, such a restriction is not found in the Registry. Accordingly, we cannot say what statute within the Registry is excessive in the way Doe pleads.

Although Doe alleges that he must "show up hundreds of times in-person to verify his information," his actual requirement is to reregister in person once annually. While Doe may have to "show up hundreds of times in-person," this is would be over the course of a lifetime. Accordingly, we find that Doe's annual in-person verification requirement is not excessive in relation to the purpose of keeping offenders' information up to date.

Doe also states that he must "surrender his blood, saliva, and DNA to the VSP." However, it appears from the language in Code § 9.1-903(B) that offenders are required to give a blood and saliva sample once upon release from confinement and for the initial registration with the Registry. As to the alleged constitutional intrusion, the Supreme Court of Virginia has held that the taking of a blood sample from convicted felons is a "minor intrusion" and "is outweighed by Virginia's interest . . . in determining inmates' 'identification characteristics specific to the person' for improved law enforcement." *Johnson v. Commonwealth*, 259 Va. 654, 672 (2000) (alteration in original) (quoting *Jones v. Murray*, 962 F.2d 302, 307 (4th Cir. 1992)). Therefore, we find that requiring a single draw of a blood and saliva sample to determine the identification characteristics specific to the registrant is a minor intrusion and not excessive.

Doe broadly suggests that the Registry "track[s] all of his online activity" and requires him to "waive any right he has to privacy." This appears to be in reference to the consent form Doe is required to execute that "authorizes a business or organization that offers electronic communications . . . to provide to the Department of State Police any information pertaining to that person necessary to determine the veracity of his electronic identity information in the Registry." Code § 9.1-903(I). Although the circuit court must accept all facts as true, "[a] demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Taboada*, 271 Va. at 317. Here, Doe concludes that because he must execute a consent form, that he "waive[s] any right he has to privacy," and that the VSP constantly executes warrantless searches of his online activity.

His legal conclusion as it pertains to the excessiveness of Code § 9.1-903(I) is incorrect because it merely authorizes a business to provide identifying information "to the Department of State Police" rather than coerce Doe into waiving all rights of privacy. Therefore, the circuit court did not err in rejecting Doe's legal conclusion that he somehow must waive all rights to his privacy by executing the consent form. Accordingly, the consent form requirement is not excessive in relation to the stated goal of protecting the public from offenders on the Registry. It seems obvious that in order to protect citizens, particularly minors, from registered sex offenders online, that the VSP should be permitted to confirm the online identity of persons on the Registry.

Lastly, Doe states that the Registry subjects him to random visits from a compliance officer. "The State Police shall physically verify . . . the registration information . . . semiannually each year . . . of those persons . . . who are required to register pursuant to this chapter." Code § 9.1-907(C). Thus, Doe is subject to two visits a year from the State Police to verify his registration information. The purpose of these visits is to confirm that the Registry information is accurate as to where the registrants reside. Otherwise, registrants could simply show up to their in-person verification and state that they reside at an address other than where they actually live, and neighbors would not be aware of where registrants live in their community. While there may not be a magic number of in-person visits from the State Police to confirm the registration information of registrants, we are not persuaded by Doe's argument that semiannual visits are excessive to the extent that would make the Registry punitive.

For the reasons stated above, the Registry is not excessive in relation to the alternative purpose assigned.

Although we can find the facts and procedural history challenging, we are bound by precedent. *See Kitze*, 23 Va. App. 213; *Baugh*, 68 Va. App. 437. And upon examination of the five factors identified in *Smith* and adopted by our courts, we find that the Registry is not "so punitive

- 16 -

either in purpose or effect as to negate [the State's] intention to deem it 'civil.'" *Smith*, 538 U.S. at 92 (alteration in original). Accordingly, it is not violative of ex post facto prohibitions and the circuit court did not err in sustaining the demurrer as to Count I.

## II. Due Process

Doe argues that the circuit court erred by failing to find that his constitutional liberty rights are violated by the Registry's lifelong monitoring.

"The principles applicable to claims asserting a denial of substantive due process rights are well established." *McCabe v. Commonwealth*, 274 Va. 558, 562 (2007). "First, the claimant must clearly describe and establish that the interest asserted is a fundamental right or liberty interest specially protected under the Due Process Clause." *Id.* "To qualify for that designation, the right asserted must be a right deeply rooted in this Nation's history and tradition or implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Id.* (alteration in original). "Legislation interfering with a fundamental right or liberty interest survives constitutional scrutiny only if it is narrowly tailored to serve a compelling state interest." *Id.* "If the asserted right is not a fundamental right or liberty interest specially protected by the Due Process Clause, the legislation will survive constitutional scrutiny if it is rationally related to a legitimate governmental interest." *Id.* at 562-63.

### A. Supervision

The law in Virginia is clear, there is "no history or tradition in our jurisprudence elevating a convicted felon's right to be free from post-incarceration registration to a fundamental or specially protected due process right." *McCabe*, 274 Va. at 565. "To the contrary, we have recognized that liberty rights of convicted felons may be curtailed more than those of the general populace." *Id.* For example, procuring a blood sample for DNA analysis from a convicted felon does not violate the Constitution. *See Johnson*, 259 Va. at 672-73. Further, Virginia Constitution Article II, § 1

restricts a convicted felon's right to vote and Code § 18.2-308.2 criminalizes possession or transportation of weapons by convicted felons. Also, in *McCabe*, the Supreme Court of Virginia held that the appellant's right to be free from *quarterly* reregistration did not qualify as a liberty interest protected by the Due Process Clause. 274 Va. at 565. For the same reasons as discussed by our Supreme Court, this Court does not find that Doe has a liberty interest in being free from annual registration as a sex offender.

### B. Property Interest

Here, Doe alleges that his property rights are violated because he "is coerced into agreeing that a warrantless . . . search can be conducted of his electronic property at any time." We note that this allegation does not necessarily track the language of the Registry. The consent form Doe refers to "authorizes a business or organization that offers electronic communications . . . to provide to the Department of State Police any information pertaining to that person necessary to determine the veracity of his electronic identity information in the Registry." Code § 9.1-903(I). Doe argues that this violates his right to due process because "a subpoena, warrant, court order or consent" is generally required before such a search is conducted. However, as it relates to the consent form under the Registry, the Department of State Police may obtain Doe's electronic identity information to merely confirm what he has already submitted through registration. Doe's allegation that this equates to a "warrantless search" "of his electronic property" is insufficient to state a claim that he has a fundamental right that is violated by the Registry. Accordingly, because Doe has failed to allege the infringement of a fundamental right, a strict scrutiny analysis is not required. *See Caldwell v. Seaboard S. R., Inc.*, 238 Va. 148 (1989) (rejecting the use of a strict scrutiny analysis of a statute that does not affect fundamental rights).

Therefore, the circuit court did not err in sustaining the demurrer as to Count II.

CONCLUSION

For the reasons stated above, the circuit court did not err in sustaining Settle's demurrer.

*Affirmed.*